## ROBERT P. GOLDEN, JR. *v.* JOHNSON MEMORIAL HOSPITAL, INC., ET AL.
### (AC 20196)

Landau, Spear and Dupont, Js.

Argued April 5—officially released October 30, 2001

*Elizabeth J. Robbin*, with whom was *Donald Gaudreau*, for the appellant (plaintiff).

*Amy F. Goodusky*, for the appellee (named defendant).

*Robert F. Kappes*, for the appellee (defendant Connecticut Pathology Associates, P.C.).

*Opinion*

SPEAR, J. In this medical malpractice action, the plaintiff, Robert P. Golden, Jr., appeals from the summary judgment rendered by the trial court in favor of the defendants, Johnson Memorial Hospital, Inc. (hospital), and Connecticut Pathology Associates, P.C. (Associates), on their defense that the plaintiff's action is time barred pursuant to General Statutes § 52-584.[1] The plaintiff claims that summary judgment was improper because (1) the repose section of § 52-584 was tolled by the continuing course of conduct doctrine, and (2) the repose section would bar his claim before he could have known that he had suffered actionable harm in violation of article first, §§ 1 and 10, and article first, § 20, of the constitution of Connecticut, as amended by article twenty-one of the amendments, and the fourteenth amendment to the United States constitution.[2]

---

[1] General Statutes § 52-584 provides in relevant part: "No action to recover damages for injury to the person . . . caused by negligence . . . or by malpractice of a physician, surgeon . . . [or] hospital . . . shall be brought but within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered, and *except that no such action may be brought more than three years from the date of the act or omission complained of . . . .*" (Emphasis added.) This appeal concerns only the second part of § 52-584, known as the repose section.

[2] Article first, § 1, of the constitution of Connecticut provides: "All men when they form a social compact, are equal in rights; and no man or set of men are entitled to exclusive public emoluments or privileges from the community."

Article first, § 10, of the constitution of Connecticut provides: "All courts shall be open, and every person, for an injury done to him in his person, property or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial or delay."

We affirm the judgment of the trial court.[3]

The following facts and procedural history are relevant to our resolution of the plaintiff's appeal. In March, 1986, the plaintiff went to the hospital because he had been suffering from a prolonged cold for over two months and, during the previous two weeks, a lump had formed on the right side of his neck. A few days later, on March 24, 1986, the plaintiff underwent surgery at the hospital to have the lump removed. On the same day, samples of the lump tissue were sent to Associates for analysis. Arturo P. Villa, a pathologist,[4] issued a final

---

Article first, § 20, of the constitution of Connecticut, as amended by article twenty-one of the amendments, provides: "No person shall be denied the equal protection of the law nor be subjected to segregation or discrimination in the exercise or enjoyment of his or her civil or political rights because of religion, race, color, ancestry, national origin, sex or physical or mental disability."

Section 1 of the fourteenth amendment to the United States constitution provides in relevant part that "[n]o state shall . . . deprive any person of life, liberty or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

[3] The plaintiff also claimed that the court improperly permitted the hospital to file a reply, on the day of the summary judgment hearing, objecting to the plaintiff's memorandum of law in opposition to the hospital's summary judgment motion. Although the court briefly referred to the reply in a footnote of its memorandum of decision, it did not rely on the assertions in the reply. In light of that fact and our plenary review rejecting the plaintiff's claims, we need not address that issue. Put another way, any impropriety in accepting the reply memorandum was harmless.

[4] The legal relationship between the hospital and Villa, an employee of Associates, is unclear from the record. The hospital and Associates had an agreement that Associates would provide a pathologist who would serve as medical director of the hospital's department of pathology. The hospital was to employ all laboratory staff members; however, the director was expected to be involved in the recruitment, selection and decisions regarding the retention of such personnel. Salaries and benefits of Associates staff were similar to those of the rest of the hospital's employees. The hospital provided all of the equipment, supplies and personnel for the pathology department.

Associates maintained professional liability insurance for its pathologists. The director was responsible for the proper functioning of all laboratory sections, performance and reports of autopsies, interpretation of results in both clinical and anatomical pathology, and served as a consultant, without

pathology report (1986 report) on a hospital letterhead diagnosing the tissue as nonspecific lymphadenitis, possibly of bacterial origin. The surgeon told the plaintiff that he was cured.[5] Thereafter, the plaintiff sought no further treatment.

Eleven years later, in late November, 1997, the plaintiff was injured playing flag football. A few days later, he sought medical treatment from his family physician, who referred him for a series of tests, including a CAT scan and ultrasound. The test results showed that the plaintiff had an enlarged spleen and multiple enlarged lymph nodes. The plaintiff's physician referred the plaintiff to Dennis Morgan, an oncologist, for treatment. On December 31, 1997, at Morgan's request, the plaintiff submitted to an exploratory laparotomy, which revealed that he had Hodgkin's disease.

During questioning regarding his health history, the plaintiff informed Morgan of the lump that was removed at the hospital eleven years earlier. Morgan requested from the hospital a review and report regarding the pathology slides made from the tissue samples in 1986. Morgan's wife, Susan Parker, a pathologist and an employee of the hospital, reviewed the 1986 tissue sample slides. Thereafter, on January 28, 1998, Parker issued a corrected report on hospital letterhead that reflected a change in the diagnosis, stating: "Lymph node, right supraclavicular: Partial lymph node involvement with Hodgkin's disease . . . ."[6]

charge to the hospital, to the attending physicians. The agreement gave Associates the sole right to render pathology services to or on behalf of the hospital. In Associates' reply to the hospital's interrogatories, it denied that the agreement was in effect at the time of the 1986 report.

[5] The physician who performed the surgery, Julio Coelho, is not a party to this action.

[6] In the hospital's brief and in oral arguments before this court, the hospital conceded that Parker was one of its employees when she issued the corrected report.

Less than six months after the corrected report was issued, but more than twelve years after the original diagnosis, the plaintiff commenced this action. One year later, the hospital and Associates both filed motions for summary judgment, claiming that the plaintiff's action was barred by the three year repose section of the statute of limitations, § 52-584, and that there were no genuine issues of material fact. The plaintiff objected to both motions. The plaintiff claimed that the defendants breached a continuing duty to him and, therefore, the statute of limitations was tolled by the continuing course of conduct doctrine. He claimed, alternatively, that the statute of repose is unconstitutional as applied to the circumstances of this case. At the hearing on the motions for summary judgment, the hospital filed a reply to the plaintiff's objection.

The court granted both defendants' motions for summary judgment, finding that there was no genuine issue of material fact as to whether the continuing course of conduct doctrine applied and, thus, that the plaintiff's claims were barred by the repose section of the statute of limitations, § 52-584. The plaintiff filed a motion for reargument, claiming that the court improperly had relied on the hospital's reply brief in its memorandum of decision. See footnote 3. The court denied the plaintiff's motion, and this appeal followed.

The standard of review of a trial court's decision to grant summary judgment is well established. "[T]he scope of our review of the granting of a motion for summary judgment is plenary. . . . In seeking summary judgment, it is the movant who has the burden of showing the nonexistence of any issue of fact. . . . Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact . . . a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evi-

dence disclosing the existence of such an issue." (Citations omitted; internal quotation marks omitted.) *Richter* v. *Danbury Hospital*, 60 Conn. App. 280, 286, 759 A.2d 106 (2000).

"Practice Book § 17-49 . . . requires that judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A material fact is a fact that will make a difference in the result of the case. . . . The facts at issue are those alleged in the pleadings. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue as to all the material facts, which, under applicable principles of substantive law, entitle him to a judgment as a matter of law. . . . The party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The test is whether a party would be entitled to a directed verdict on the same facts. . . . A motion for summary judgment is properly granted if it raises at least one legally sufficient defense that would bar the plaintiff's claim and involves no triable issue of fact." (Citations omitted; internal quotation marks omitted.) *Mountaindale Condominium Assn., Inc.* v. *Zappone*, 59 Conn. App. 311, 315, 757 A.2d 608, cert. denied, 254 Conn. 947, 762 A.2d 903 (2000).

I

THE TOLLING ISSUE

The plaintiff's principal claim is that the determination of whether the continuing course of conduct doctrine applies is "a factual question to be determined by the jury." He makes the subsidiary claims that the court

improperly (1) decided the question of a continuing duty rather than determining whether a genuine issue of material fact existed on that question and (2) based its decision on our holding in *Witt* v. *St. Vincent's Medical Center*, 52 Conn. App. 699, 727 A.2d 802 (1999), which subsequently was reversed by our Supreme Court in *Witt* v. *St. Vincent's Medical Center*, 252 Conn. 363, 746 A.2d 753 (2000). The plaintiff's principal claim turns on the question of whether the defendants had a continuing duty to the plaintiff, and the related issues are subsumed in our resolution of that question.[7]

Our Supreme Court has recognized "that the statute of limitations, in the proper circumstances, may be tolled under the continuous treatment or the continuing course of conduct doctrine, thereby allowing a plaintiff to commence his or her lawsuit at a later date." *Blanchette* v. *Barrett*, 229 Conn. 256, 265, 640 A.2d 74 (1994). "Both of these doctrines are well established in the jurisprudence of this state. . . . The continuous treatment doctrine was first recognized in a medical malpractice context in *Giambozi* v. *Peters*, [127 Conn. 380, 16 A.2d 833 (1940), overruled on other grounds, *Foran* v. *Carangelo*, 153 Conn. 356, 360, 216 A.2d 638 (1966)]. We stated in *Giambozi* that [t]he term malpractice itself may be applied to a single act of a physician or surgeon or, again, to a course of treatment. The Statute of Limitations begins to run when a breach of duty occurs. When the injury is complete at the time of the act, the statutory period commences to run at that time. When, however, the injurious consequences arise from a course of treatment, the statute does not begin to run until the treatment is terminated. . . .

"As an alternative, the continuing course of conduct doctrine has also been applied to toll the statute of

---

[7] The plaintiff's claims all are based on Associates' misdiagnosis, and he does not differentiate between the defendants. Accordingly, we treat the hospital and Associates as one.

limitations. In its modern formulation, we have held that in order [t]o support a finding of a continuing course of conduct that may toll the statute of limitations there must be evidence of the breach of a duty that remained in existence after commission of the original wrong related thereto. That duty must not have terminated prior to the commencement of the period allowed for bringing an action for such a wrong. . . . Where we have upheld a finding that a duty continued to exist after the cessation of the act or omission relied upon, there has been evidence of either a special relationship between the parties giving rise to such a continuing duty or some later wrongful conduct of a defendant related to the prior act. . . .

"Although the continuing course of treatment and the continuing course of conduct doctrines are analytically separate and distinct, their relevance to any particular set of circumstances . . . may overlap. In underlying policy, the doctrines have considerable similarity. In application, both doctrines are conspicuously fact-bound.

"These doctrines share similar supporting rationales. The continuing course of conduct doctrine reflects the policy that, during an ongoing relationship, lawsuits are premature because specific tortious acts or omissions may be difficult to identify and yet be remedied. Similarly, [t]he policy underlying the continuous treatment doctrine seeks to maintain the physician/patient relationship in the belief that the most efficacious medical care will be obtained when the attending physician remains on a case from onset to cure." (Citations omitted; internal quotation marks omitted.) *Blanchette* v. *Barrett*, supra, 229 Conn. 274–76.

The gravamen of the continuing course of conduct doctrine is that a duty continues after the original wrong is committed. Here, to prevail, the plaintiff had to show

that Associates remained under a duty to him after the original misdiagnosis in 1986.

The plaintiff relies on our Supreme Court's statement in *Blanchette* that the application of the continuing course of conduct doctrine is "conspicuously fact-bound." Id., 276. The plaintiff fails to appreciate that *before* the doctrine can *be applied*, a duty must first be found to have existed. "The existence of a duty is a question of law and only if such a duty is found to exist does the trier of fact then determine whether the defendant violated that duty in the particular situation at hand." (Internal quotation marks omitted.) *Mendillo* v. *Board of Education*, 246 Conn. 456, 483, 717 A.2d 1177 (1998). Our view of that legal question is plenary, and the plaintiff's claim rises or falls on whether such a continuing duty exists.

The plaintiff claims that the defendants owed a continuing duty to him from the time of the original misdiagnosis in 1986 until the issuance of the corrected report in 1998. The plaintiff asserts that the pathologist's duty to the patient arises out of his examination of the patient's tissue, his analysis of that tissue, and his diagnosis resulting from that examination and analysis. The plaintiff further argues that his reliance on Villa's diagnosis in the 1986 report and the fact that he did not consult with another physician because he was not provided follow-up treatment or given instructions on follow-up care shows that Associates had a continuing physician-patient relationship with him.

"We have stated that the test for the existence of a legal duty of care entails (1) a determination of whether an ordinary person in the defendant's position, knowing what the defendant knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result, and (2) a determination, on the basis of a public policy analysis, of whether the

defendant's responsibility for its negligent conduct should extend to the particular consequences or particular plaintiff in the case. . . . The first part of the test invokes the question of foreseeability, and the second part invokes the question of policy." (Citations omitted; internal quotation marks omitted.) Id., 483–84.

Our first step in deciding whether Associates had a duty to follow-up or instruct on follow-up care and the extent of Associates' duty or duties is to determine the foreseeability of the plaintiff's injury. When determining whether the defendant breached a duty owed to the plaintiff in cases sounding in professional negligence, the plaintiff is required to present evidence from an expert where knowledge of the duty is beyond the experience of an ordinary fact finder. *Sherwood* v. *Danbury Hospital*, 252 Conn. 193, 207–208 n.13, 746 A.2d 730 (2000). The affidavit of the plaintiff's expert indicated that Associates should have known that the plaintiff had Hodgkin's disease. Moreover, Associates conceded that it committed an initial wrong against the plaintiff, namely the misdiagnoses. We conclude that Associates should have known from the 1986 pathology slides that the plaintiff had Hodgkin's disease, but failed to diagnose it and that it was foreseeable that the plaintiff's injuries would include an advanced stage of Hodgkin's disease.

Having concluded that the plaintiff's injuries were foreseeable, we need to determine, as a matter of policy, the extent of the legal duty to be imposed on Associates. We must, therefore, determine whether Associates' responsibility should extend to providing the plaintiff with either follow-up treatment or instruction on follow-up care.

"While it may seem that there should be a remedy for every wrong, this is an ideal limited perforce by the realities of this world. Every injury has ramifying

consequences, like the ripplings of the waters, without end. The problem for the law is to limit the legal consequences of wrongs to a controllable degree. . . . The final step in the duty inquiry, then, is to make a determination of the fundamental policy of the law, as to whether the defendant's responsibility should extend to such results." (Internal quotation marks omitted.) *Mendillo* v. *Board of Education*, supra, 246 Conn. 484.

The statute of limitations and repose sections are a way of implementing the public policy of limiting the legal consequences of wrongs to a controllable degree. "There are two principal reasons generally given for the enactment of a statute of repose: (1) it reflects a policy of law, as declared by the legislature, that after a given length of time a [defendant] should be sheltered from liability and furthers the public policy of allowing people, after the lapse of a reasonable time, to plan their affairs with a degree of certainty, free from the disruptive burden of protracted and unknown potential liability . . . and (2) to avoid the difficulty in proof and record keeping which suits involving older [claims] impose." (Internal quotation marks omitted.) *Sanborn* v. *Greenwald*, 39 Conn. App. 289, 305, 664 A.2d 803, cert. denied, 235 Conn. 925, 666 A.2d 1186 (1995).

*Witt* was the only case in which our Supreme Court extended the duty of a pathologist, in the context of a physician-patient relationship, to warn the plaintiff of his concern of cancer at the time of the original diagnosis. *Witt* v. *St. Vincent's Medical Center*, supra, 252 Conn. 376. Eleven years after the original diagnosis, the pathologist sent the original slides and report to the plaintiff's treating oncologist. On the report, the pathologist wrote a note to the treating oncologist indicating that at the time of the original diagnosis the pathologist had been concerned that the plaintiff might have been "evolving a small lymphocytic lymphoma/CCL." Id., 365. Our Supreme Court concluded that whether the physi-

cian-patient relationship with the pathologist may have continued on the basis of his continuing duty to warn the plaintiff of his concerns and whether his duty to warn was continually breached were questions of material fact and, therefore, that summary judgment was improper. Id., 376–77. Here, there is nothing in the record to indicate that Associates had concerns or failed to report its complete findings to the plaintiff. *Will*, therefore, does not apply.

In *Blanchette* v. *Barrett*, supra, 229 Conn. 278–79, our Supreme Court concluded that a family physician had a duty to monitor a patient subsequent to a negative diagnosis. The defendant's duty to monitor the plaintiff's illness arose from his ongoing relationship with the plaintiff. Although no ongoing relationship is required for the continuing course of conduct doctrine to apply, in *Blanchette*, the "defendant's affirmative continuing duty to monitor the plaintiff's illness arose from his ongoing relationship with the plaintiff." *Sherwood* v. *Danbury Hospital*, supra, 252 Conn. 210. Here, we do not have that type of relationship. The plaintiff admitted that he was not even aware that a pathologist was involved in his diagnosis. There was no actual contact between Associates and the plaintiff. Furthermore, Associates performed no subsequent work for the plaintiff, and there was nothing in the record showing that it was required to do so.

We conclude that, as a matter of law, to expect a pathology group to provide follow-up treatment or to instruct a patient on follow-up care after a negative diagnosis when there is no awareness that the diagnosis is wrong and there is no ongoing relationship is beyond the expectation of public policy. The plaintiff fails to establish justification necessary to support recognition of a legal duty on the part of Associates to provide him with follow-up treatment or instruction on follow-up care where there is a misdiagnosis of which Associates

was unaware. The plaintiff fails to cite any case in which a pathologist in those circumstances, as a matter of law, was found to have a duty to provide follow-up treatment to a patient or to instruct a patient on follow-up care.

Furthermore, "[t]he application of the continuing course of conduct doctrine necessitates an examination of the cases in which the statute of limitations was tolled on the basis of that doctrine." *Sanborn* v. *Greenwald*, supra, 39 Conn. App. 296. In the context of medical malpractice and the applicability of the continuing course of conduct doctrine, our Supreme Court has tolled the statute of limitations when there was a duty to: (1) warn the plaintiff of concerns at the time of the original diagnosis; *Witt* v. *St. Vincent's Medical Center*, supra, 252 Conn. 376; (2) notify the plaintiff of untested blood; *Sherwood* v. *Danbury Hospital*, supra, 252 Conn. 197; (3) monitor a plaintiff's condition after a negative diagnosis where there was an ongoing relationship; *Blanchette* v. *Barrett*, supra, 229 Conn. 280; and (4) warn a plaintiff of potential harmful effects of a prescription drug. *Cross* v. *Huttenlocher*, 185 Conn. 390, 402, 440 A.2d 952 (1981).

To extend an initial duty to a pathologist to provide follow-up treatment or to instruct a patient on follow-up care when there is a negative diagnosis and no ongoing relationship would basically render the statute of limitations a nullity. That result would be against the policy of limiting the liability of defendants to claims brought within a reasonable time. As our Supreme Court stated in *Blanchette*, "[w]e do not think that the language or policy of the statute permits such a reading." *Blanchette* v. *Barrett*, supra, 229 Conn. 284. Accordingly, we conclude that there was no initial duty for Associates or the hospital to provide follow-up treatment or to instruct the plaintiff on follow-up care; therefore, there was no subsequent wrongful misconduct and no genu-

ine issue of material fact as to whether there was a continuing duty.

The plaintiff also argues that the court improperly decided questions of fact and ignored its obligation to view the facts presented in the light most favorable to him. Specifically, the plaintiff argues that the facts that the defendants kept the pathology slides, reevaluated the slides and issued the corrected report implied that there was a continuing duty; thus, the court's holding that there was no continuing duty was improper. We disagree.

As we already have resolved, Associates and the hospital had no duty to the plaintiff after the diagnosis of the slides and the issuance of the 1986 report. There may be a number of reasons why the defendants kept the slides, but the plaintiff offers nothing in support of his assertion that merely retaining the slides imposes a continuing duty on the defendants. The reevaluation of the slides and the corrected report resulted from the plaintiff's new relationship with Morgan, not the former relationship with the defendants.

The plaintiff further argues that the court improperly relied on *Witt* v. *St. Vincent's Medical Center*, supra, 52 Conn. App. 699, in which the judgment subsequently was reversed by our Supreme Court. We agree. We may, however, rely on alternate grounds supported by the record to sustain a judgment. *Galvanek* v. *Skibitcky*, 55 Conn. App. 254, 257 n.5, 738 A.2d 1150 (1999). "Where the trial court reaches a correct decision but on mistaken grounds, this court has repeatedly sustained the trial court's action if proper grounds exist to support it." (Internal quotation marks omitted.) Id. Here, the court relied on our decision in *Witt* v. *St. Vincent's Medical Center*, supra, 52 Conn. App. 707, which subsequently was overturned by our Supreme Court in *Witt* v. *St. Vincent's Medical Center*, supra, 252 Conn. 376–

77. In *Witt* v. *St. Vincent's Medical Center*, supra, 52 Conn. App. 699, we concluded that the court properly had determined that there were no genuine issues of material fact regarding the applicability of the continuing course of conduct doctrine. Even though the trial court in this case relied on our subsequently overruled decision in *Witt* v. *St. Vincent's Medical Center*, supra, 52 Conn. App. 699, its conclusion was proper because the defendants had no continuing duty.

The plaintiff further argues that there is a question of fact as to whether the corrected report and his expert's report together show that Associates' 1986 misdiagnosis was so egregious that it rises to the level of fraudulent concealment.[8] The hospital argues that this argument has not been properly preserved for our review. We conclude that even if that argument was preserved properly for our review, it has no merit.

To establish that the hospital had fraudulently concealed the existence of his cause of action and so had tolled the statute of limitations, the plaintiff had the burden of showing in his opposition papers that the hospital was aware of the facts necessary to establish that cause of action and that it had *intentionally* concealed those facts from the plaintiff. See, e.g., *Connell* v. *Colwell*, 214 Conn. 242, 250, 571 A.2d 116 (1990). There is nothing in the record that supports fraud on the part of the hospital by intentionally concealing a correct diagnosis from the plaintiff to prevent him from bringing a cause of action in medical malpractice. To the contrary, once the hospital was aware that there was a misdiagnosis, it issued the corrected report.

---

[8] General Statutes § 52-595 provides: "If any person, liable to an action by another, fraudulently conceals from him the existence of the cause of such action, such cause of action shall be deemed to accrue against such person so liable therefor at the time when the person entitled to sue thereon first discovers its existence."

## II

## THE CONSTITUTIONAL CLAIMS

The plaintiff claims that the court improperly concluded that the repose section of the statute of limitations, § 52-584, does not violate either the state or federal constitutions. Specifically, he argues that the repose section of the statute of limitations, § 52-584, as applied to him, violates (1) the open courts provision of article first, § 10, of the constitution of Connecticut, (2) his due process rights as guaranteed by the constitution of Connecticut and the fourteenth amendment to the United States constitution, and (3) his equal protection rights as contained in article first, § 1, and article first, § 20, of the constitution of Connecticut, as amended by article twenty-one of the amendments, and the fourteenth amendment to the United States constitution.

## A

First, the plaintiff claims that the repose section of § 52-584 violates the open courts provision of article first, § 10, of the constitution of Connecticut and that it therefore is unconstitutional. Specifically, he argues that (1) the repose section denies him his right to bring a claim without providing a reasonable alternative, and (2) his right to bring a claim is protected by our Supreme Court's definitions of "injury" and "actionable harm."

"We recognize that a party challenging the constitutionality of a statute must prove its unconstitutionality beyond a reasonable doubt. . . . While the courts may declare a statute to be unconstitutional, our power to do this should be exercised with caution, and in no doubtful case. . . . Every presumption is to be given in favor of the constitutionality of the statute." (Internal quotation marks omitted.) *Sanborn* v. *Greenwald*, supra, 39 Conn. App. 299.

Article first, § 10, of the constitution of Connecticut, provides: "All courts shall be open, and every person, for an injury done to him in his person, property or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial or delay." "Article first, § 10, has been viewed as a limitation upon the legislature's ability to abolish common law and statutory rights that existed in 1818, when article first, § 10, was adopted, and which were incorporated in that provision by virtue of being established by law as rights the breach of which precipitates a recognized injury . . . . Therefore, where a right existed at common law or by statute in 1818 and became incorporated into the Connecticut constitution by the adoption of article first, § 10, the legislature may restrict or abolish such incorporated right only where it provides a reasonable alternative to the enforcement of such right." (Citations omitted; internal quotation marks omitted.) *Ecker* v. *West Hartford*, 205 Conn. 219, 234, 530 A.2d 1056 (1987).

At issue here is the right to bring a cause of action for injury to the plaintiff arising out of the alleged medical negligence of the defendants, a cause of action that existed at common law. See 2 Z. Swift, A System of the Laws of the State of Connecticut (1796) pp. 107–108 (cause of action for trespass on case existed where injury suffered by plaintiff caused by neglect of defendant).

The repose section of the statute of limitations contained in § 52-584 provides in relevant part: "No action to recover damages for injury to the person . . . caused by negligence . . . or by malpractice of a physician, surgeon . . . [or] hospital . . . may be brought more than three years from the date of the act or omission complained of . . . ."

"Statutes of repose are constitutional enactments that involve a balancing of the hardship caused by the

potential bar of a just claim with the advantage of barring stale claims. . . . When a right exists at common law, a statute of repose functions only as a qualification on the remedy to enforce the preexisting right." (Citations omitted; internal quotation marks omitted.) *Sanborn* v. *Greenwald*, supra, 39 Conn. App. 305–306.

In *Vilcinskas* v. *Sears, Roebuck & Co.*, 144 Conn. 170, 174, 127 A.2d 814 (1956), our Supreme Court addressed the constitutionality of General Statutes (1949 Rev.) § 8324, the predecessor to § 52-584. In dicta, the court observed that "[t]here is no reason, constitutional or otherwise, which prevents the legislature from enacting a statute, such as § 8324, which starts the limitation on actions for negligence running from the date of the act or omission complained of, even though at that date no person has sustained damage and therefore no cause of action has come into existence. Indeed, such a provision accords with the purposes of statutes of limitation. . . . It is consonant with the purpose of protecting defendants against stale claims that the legislature should enact a statute, such as § 8324, which may on occasion bar an action even before the cause of action accrues." (Internal quotation marks omitted.) Id., 174–75. Neither our Supreme Court nor this court, however, has addressed directly the constitutionality of the repose section of the statute of limitations, § 52-584, in circumstances such as that of the plaintiff.

In *Sanborn* v. *Greenwald*, supra, 39 Conn. App. 306, a legal malpractice case, we addressed the constitutionality of the three year limitation period contained in General Statutes § 52-577,[9] which contains almost identical language to § 52-584 and had the identical effect of barring the plaintiff's cause of action before it had

---

[9] General Statutes § 52-577 provides: "No action founded upon a tort shall be brought but within three years from the date of the act or omission complained of."

accrued. We concluded that even though § 52-577 did limit a common-law right that existed in 1818, it did not restrict or abridge the cause of action because it merely established the time period within which the plaintiff could assert that right.[10] *Sanborn* v. *Greenwald*, supra, 304–305.

Both here and in *Sanborn*, the plaintiffs questioned whether statutes of limitation that bar causes of action before they accrue are constitutional. Similar to § 52-577, § 52-584 does not, on its face, abridge or abolish the common-law action of negligence. The plaintiff has a right of redress that exists during the three year period prescribed by § 52-584. By analogy, if § 52-577 may constitutionally bar an action against an attorney for injuries arising from legal malpractice, an action that existed at common law, then § 52-584 also may survive such an attack.

The plaintiff argues that § 52-584 deprives him of his right to bring a claim of medical negligence without

---

[10] In *Sanborn*, we observed that the right to bring an action against an attorney existed at common law and could be "traced back to the English common law action of trespass on the case." *Sanborn* v. *Greenwald*, supra, 39 Conn. App. 299. We further observed that "[a]t the time our constitution was adopted in 1818 . . . there was no statute of limitations that restricted this type of action . . . . In May, 1819, [however] a committee was appointed to examine the statute laws, and to recommend such alterations and provisions as should be necessary and expedient to render the statutes conformable to the constitution. . . . In 1821, the committee reported to the legislature . . . . [Pursuant to the report, the legislature enacted] § 4 of title 59, entitled Limitations. An Act for the Limitation of Civil Actions, and of Criminal Prosecutions, which provided: No action of trespass on the case shall be brought but within six years next after the right of action shall accrue." (Citation omitted; internal quotation marks omitted.) Id., 300.

In deciding the constitutionality of General Statutes § 52-577, we relied on that language as evidence of the intent of the framers of the constitution, citing *State* v. *Joyner*, 225 Conn. 450, 462, 625 A.2d 791 (1993), as support for us to look to the laws enacted close to the time of the adoption of the constitution of 1818 to enhance our understanding of the original intent of the framers of the constitution. *Sanborn* v. *Greenwald*, supra, 39 Conn. App. 301.

providing a reasonable alternative. Specifically, he argues that the application of § 52-584 entirely deprives him of his right to redress because it unconstitutionally bars his action before he is able to discover his injury.

"Reasonable conditions on a cause of action do not amount to a violation of the constitution. . . . A strict and inflexible interpretation of article first, § 10, could affect the legislature's ability to pass, enact and repeal laws. Such an encumbrance upon the legislature would freeze common law rights in perpetuity." (Citation omitted; internal quotation marks omitted.) Id., 304. The plaintiff is not deprived entirely of his right to redress. His right to redress is limited to a specified period of time. The common-law right that the plaintiff claims was abridged by the application of § 52-584 is the right to bring an action in tort for medical malpractice against a hospital and a pathologist. Section 52-584 restricts the right to bring an action for medical negligence only to the extent that it restricts the time for bringing the action, which we conclude is reasonable, as we did relative to § 52-577 in *Sanborn*.

Our Supreme Court has "specifically determined that a lawsuit commenced more than three years from the date of the negligent act or omission complained of is barred by the statute of limitations, § 52-584, regardless of whether the plaintiff had not or, in the exercise of care, could not reasonably have discovered the nature of the injuries within that time period. *Stein* v. *Katz*, 213 Conn. 282, 285, 567 A.2d 1183 (1989); *Catz* v. *Rubenstein*, 201 Conn. 39, 49–50, 513 A.2d 98 (1986); *McDonald* v. *Haynes Medical Laboratory, Inc.*, 192 Conn. 327, 334, 471 A.2d 646 (1984)." *Blanchette* v. *Barrett*, supra, 229 Conn. 265. In light of our Supreme Court's previous decisions, we cannot agree with the plaintiff's argument. A common-law cause of action may be limited by the statute of limitations, regardless of

whether the cause of action was discovered or could have been discovered within the time prescribed.

The plaintiff claims that his right to bring a claim is protected by our Supreme Court's definition of "injury" as contained in article first, § 10, of the constitution of Connecticut. Relying on *Catz* v. *Rubenstein*, supra, 201 Conn. 43–47, the plaintiff argues that our Supreme Court has defined "injury," specifically in the context of § 52-584, to mean "actionable harm," which accrues only when the plaintiff discovers the essential elements of his cause of action. The plaintiff misapplies *Catz*.

In *Catz* v. *Rubenstein*, supra, 201 Conn. 50, our Supreme Court specifically stated that its holding would "only affect causes of action not barred by the repose portion of § 52-584 which bars suit brought 'more than three years from the [date of the] act or omission complained of.'" Here, we have a cause of action that is barred by the repose section of the statute of limitations, § 52-584; thus, the holding in *Catz* does not apply.

### B

The plaintiff claims that application of the repose section of the statute of limitations, § 52-584, denies him the property right to bring a claim without due process in violation of our state constitution and the fourteenth amendment to the United States constitution. We decline to address that claim. Although the plaintiff does cite one case in his principal brief on that issue,[11] the six sentences comprising his claim are inadequate. "Where a claim receives only cursory attention in the brief without substantive discussion, it is deemed to be abandoned." (Internal quotation marks

---

[11] *Roundhouse Construction Corp.* v. *Telesco Masons Supplies Co.*, 168 Conn. 371, 376, 362 A.2d 778, vacated, 423 U.S. 809, 96 S. Ct. 20, 46 L. Ed. 2d 29 (1975), aff'd on remand, 170 Conn. 155, 365 A.2d 393, cert. denied, 429 U.S. 889, 97 S. Ct. 246, 50 L. Ed. 2d 172 (1976), citing *Baldwin* v. *Hale*, 68 U.S. (1 Wall.) 223, 233, 17 L. Ed. 531 (1864).

omitted.) *In re Amanda A.*, 58 Conn. App. 451, 459, 755 A.2d 243 (2000). The plaintiff's claim is inadequately briefed and, therefore, is deemed abandoned.

## C

The plaintiff finally argues that the repose section of the statute of limitations violates his equal protection rights as contained in article first, § 1, and article first, § 20, of the constitution of Connecticut, as amended by article twenty-one of the amendments, and the fourteenth amendment to the United States constitution. The plaintiff argues that the repose section of the statute of limitations, § 52-584, treats similarly situated victims of medical malpractice in a disparate fashion. Victims whose diseases have a long latency period, who may be barred from filing a claim if the malpractice is not discovered within three years, are treated differently from other tort victims. We are not persuaded.

"When a statute is challenged on equal protection grounds . . . the reviewing court must first determine the standard by which the challenged statute's constitutional validity will be determined. . . . When a statutory classification impinges upon an inherently suspect class or affects a fundamental personal right, the statute is subject to strict scrutiny and is justified only by a compelling state interest. . . . Otherwise, a statute will stand if the classification bears a reasonable relation to a legitimate state interest." (Citations omitted; internal quotation marks omitted.) *Zapata* v. *Burns*, 207 Conn. 496, 505, 542 A.2d 700 (1988).

The plaintiff asserts that our Supreme Court has declared that any right contained in article first of the constitution of Connecticut is fundamental and, therefore, the strict scrutiny standard of review applies, and the defendants' burden is to demonstrate that the repose section of the statute of limitations, § 52-584, is

necessary to advance a compelling state interest. We disagree.

"A right is fundamental for purposes of equal protection analysis if it is explicitly or implicitly guaranteed by the constitution." Id. The plaintiff's claim does not implicate any explicit or implicit fundamental rights; thus, we employ the rational basis test in reviewing it. "We have never held . . . that a constitutional right of access to the courts automatically translates each and every claim that a litigant may raise into one invoking fundamental rights. It cannot seriously be argued that a statutory entitlement to sue for wrongful death of another is itself a fundamental or constitutional right. . . . The plaintiffs offer no reason why this principle should not apply equally to actions for personal injuries. In *Ryszkiewsicz* v. *New Britain*, [193 Conn. 589, 597–98, 479 A.2d 793 (1984)], we applied the rational basis test to a statute despite the plaintiff's claim that it must face strict scrutiny because it impinges on the fundamental right to recover damages for injuries from tortious acts, citing the Connecticut constitution, article first, § 10. We conclude, therefore, that the standard by which to determine the equal rights protection challenge to § 52-584a is the rational basis test." (Citations omitted; internal quotation marks omitted.) *Zapata* v. *Burns*, supra, 207 Conn. 507; see also *Keegan* v. *Aetna Life & Casualty Ins. Co.*, 42 Conn. App. 803, 808–809, 682 A.2d 132, cert. denied, 239 Conn. 942, 686 A.2d 120 (1996).

"The relevant inquiry is whether the classification and disparate treatment inherent in the statute of repose legislation bears a rational relationship to a legitimate state end and is based on reasons related to the accomplishment of that goal. . . . [T]he Fourteenth Amendment does not deny to States the power to treat different classes of persons in different ways. . . . The equal protection clause of that amendment does, however, deny to States the power to legislate that different treatment be accorded to persons placed by a statute into

different classes on the basis of criteria wholly unrelated to the objective of that statute. A classification must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike."[12] (Citations omitted; internal quotation marks omitted.) *Daily* v. *New Britain Machine Co.*, 200 Conn. 562, 577–78, 512 A.2d 893 (1986).

"Every presumption is to be given in favor of the constitutionality of the statute. . . . [C]ourts will assume that the legislature intended to accomplish a reasonable and rational result. . . . [L]egislative enactments carry with them a strong presumption of constitutionality, and . . . a party challenging the constitutionality of a validly enacted statute bears the heavy burden of proving the statute unconstitutional beyond a reasonable doubt." (Citations omitted; internal quotation marks omitted.) *Zapata* v. *Burns*, supra, 207 Conn. 507–508.

Our analysis of this equal protection claim by the plaintiff is the same as our analysis of his first constitutional claim because the fundamental concern of both claims is the alleged disparate treatment given to plaintiffs who discover their injury after the three year limitations period. "[I]n areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection chal-

---

[12] In this case, the plaintiff did not argue for greater protection under the state equal protection provision than under its federal counterpart. Where, as here, "a party does not provide an independent analysis asserting the existence of greater protection under the state constitutional provision than its federal counterpart . . . the federal equal protection standard is considered prevailing for the purposes of our review of both the state and federal equal protection claims . . . ." *Barton* v. *Ducci Electrical Contractors, Inc.*, 248 Conn. 793, 812–13 n.15, 730 A.2d 1149 (1999).

lenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." (Internal quotation marks omitted.) *Broadley* v. *Board of Education*, 229 Conn. 1, 8–9, 639 A.2d 502 (1994). Even if we assume arguendo that the two categories of plaintiffs identified by the plaintiff are similarly situated with respect to the statute, and relying on our analysis of the plaintiff's first constitutional claim, we conclude that a rational basis does exist for that classification. Although it results in disparate treatment for those who do not discover their injury within the three year limitations period, the classification bears a reasonable relationship to the legislative goal of the repose section of the statute of limitations. Accordingly, § 52-584 is constitutional as applied to the plaintiff.

The judgment is affirmed.

In this opinion the other judges concurred.