[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is a malpractice case brought by Christopher Neuhaus, a minor, and his mother and father, Andrea and David Neuhaus, both individually and as parents and guardians of Christopher, against the defendant, Corinne DeCholnoky, M.D., an obstetrician. The defendant seeks summary judgment on the theory that the statute of limitations for malpractice, General Statutes § 52-584,[1] had expired before suit was commenced on July 25, 1996.
The plaintiffs' third amended complaint, filed on May 26, 2000, contains ten counts. Remaining counts one through six[2] allege facts sounding in negligence, negligent infliction of emotional distress, loss of filial consortium[3] and the fraudulent concealment of these causes of action against Dr. DeCholnoky.
The plaintiffs allege that while pregnant with her son, Christopher, Andrea Neuhaus saw and was treated by her obstetrician, DeCholnoky, from February 19, 1990 until August 1990. Following a discussion with DeCholnoky, Mrs. Neuhaus decided to have labor induced at thirty-seven weeks into the term of her pregnancy. After being admitted to Stamford Hospital, she gave birth to Christopher on September 17, 1990.
The plaintiffs contend that, as a result of the inducement, Christopher suffers from multiple injuries. Specifically, they allege that DeCholnoky failed to care adequately for Mrs. Neuhaus and Christopher during the pregnancy, labor, delivery and post-natal period; failed to perform an amniocentesis; failed to test Christopher's lung maturity while in utero; misdiagnosed the meaning of Christopher's head size; and failed to understand the information provided to her by Yale New Haven Hospital regarding his head size. Consequently, the plaintiffs allege, due to DeCholnoky's actions or inactions, Christopher suffers from permanent injuries, including: "a. respiratory distress syndrome [(RDS)]; b. pneumothorax; c. use of respirator and intubation; d. brain damage; e. cerebral palsy; f. expressive and receptive language deficits; g. fine CT Page 2002 and gross motor control deficits; h. hand-eye coordination and manual dexterity deficits; i. hypotonia; j. ankle clonus; k. scapular winging and forefoot pronation; I. neurological, physiological and psychological sequelae."
DeCholnoky argues that the statute of limitations set forth in General Statutes § 52-584 bars the plaintiffs' claims. The plaintiffs respond, to the contrary, that the subject three-year statute of limitations was tolled until the plaintiffs discovered the degree and severity of Christopher's injuries and the defendant's alleged negligence, and they also contend that, due to the defendant's alleged fraudulent concealment of any cause of action the plaintiffs may have had against her, the statute is tolled. DeCholnoky claims that the plaintiffs cannot produce any evidence which shows that she intentionally concealed any cause of action.
Additionally, the plaintiffs argue that General Statutes § 52-584
is unconstitutional in that it violates Christopher's rights both to redress and to equal protection. They further contend that DeCholnoky committed an initial wrong against the plaintiffs by not advising them of Christopher's immature lungs, medical treatment given to Christopher and of his prognosis, and that the defendant owed the plaintiffs a continuing duty to so advise them, which she breached. Finally, the plaintiffs argue that because DeCholnoky had a "special relationship" with Christopher at the time he sustained the initial injury, she is liable for his injuries.
Pursuant to Practice Book § 17-49, a motion for summary judgment shall be granted if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Citations omitted; internal quotation marks omitted.) Appleton v. Board of Education,254 Conn. 205, 209, 757 A.2d 1059 (2000). "In ruling on a motion for summary judgment, the court's function is not to decide issues of material fact, but rather to determine whether any such issues exist."Nolan v. Borkowski, 206 Conn. 495, 500, 538 A.2d 1031 (1988).
In light of the parties' arguments, this court must decide whether, as a matter of law and viewing the evidence in the light most favorable to CT Page 2003 the nonmoving party, under the facts presented, the statute of limitations set for in General Statutes § 52-584 were tolled.
Referring to "two years from the date when the injury is first sustained or discovered or should have been discovered," General Statutes § 52-584 provides a two-year statute of limitations period for bringing a negligence action for injuries sustained as a result of medical malpractice. Section 52-584 extends the limitation in a repose section, which states in relevant part: "No action to recover damages for injury to the person . . . caused by malpractice of a physician . . . may be brought more than three years from the date of the act or omission complained of . . ." The Connecticut Supreme Court has noted that "the relevant `date of the act or omission complained of,' as that phrase is used in § 52-584, is the date when the negligent conduct of the defendant occurs and . . . not when the plaintiff first sustains damage." (Internal quotation marks omitted.) Sherwood v. Danbury Hospital,252 Conn. 193, 202, 746 A.2d 730 (2000). The statute of limitations set forth in § 52-584, however, is not without exception, as our Supreme Court has recognized "that a statute of limitations [and the repose section contained there in] may be tolled under the [continuing treatment or] continuing course of conduct doctrine, thereby allowing a plaintiff to commence his or her lawsuit at a later date . . ." (Citations omitted; internal quotation marks omitted.) Sherwood v. DanburyHospital, supra, 252 Conn. 202-03.
The plaintiffs also argue that, pursuant to General Statutes §52-595, DeCholnoky's alleged fraudulent concealment of the cause of action, the statute of limitations is tolled. § 52-595 states that "[i]f any person, liable to an action by another, fraudulently conceals from him the existence of the cause of such action, such cause of action shall be deemed to accrue against such person so liable therefor at the time when the person entitled to sue thereon first discovers its existence." "[T]o prove fraudulent concealment, the plaintiffs [are] required to show by clear and convincing evidence: (1) a defendant's actual awareness, rather than imputed knowledge, of the facts necessary to establish the plaintiffs' cause of action; (2) that defendant's intentional concealment of these facts from the plaintiffs; and (3) that defendant's concealment of the facts [was] for the purpose of obtaining delay on the plaintiffs' part in filing a complaint on their cause of action." Bartone v. Robert L. Day Co., 232 Conn. 527, 533, 656 A.2d 221
(1995).
The parties do not dispute that DeCholnoky's allegedly negligent acts, including the decisions to forgo performance of amniocentesis and to induce labor, occurred in September 1990. Over five and one-half years CT Page 2004 later, in July 1996, the plaintiffs served the initial complaint in this action. Obviously, this is well beyond the three-year repose provision contained in § 52-584. Therefore, unless the continuing course of conduct doctrine or fraudulent concealment save this action from application of the three-year period of repose, this action is barred. It is important to note that this motion for summary judgment is not predicated on whether the defendant doctor did or did not conform to the standard of care of obstetricians in 1990, but whether there is any genuine issue of material fact regarding the expiration of the statute of limitations.
Continuing Course of Conduct
"The continuing course of conduct doctrine reflects the policy that, during an ongoing relationship, lawsuits are premature because specific tortious acts or omissions may be difficult to identify and yet be remedied. Similarly, [t]he policy underlying the continuous treatment doctrine seeks to maintain the physician/patient relationship in the belief that the most efficacious medical care will be obtained when the attending physician remains on a case from onset to cure." (Internal quotation marks omitted.) Blanchette v. Barrett, 229 Conn. 256, 276,640 A.2d 74 (1994).
"[I]n order [t]o support a finding of continuing course of conduct that may toll the statute of limitations there must be evidence of the breach of a duty that remained in existence after commission of the original wrong related thereto. That duty must not have terminated prior to commencement of the period allowed for bringing an action for such a wrong . . . Where [the Supreme Court has] upheld a finding that a duty continued to exist after the cessation of the act or omission relied upon, there has been evidence of either a special relationship between the parties giving rise to such a continuing duty or some later wrongful conduct of a defendant related to the prior act." (Internal quotation marks omitted.) Sherwood v. Danbury Hospital, supra, 252 Conn. 203.
The plaintiffs contend that under the application of the doctrines of continuing course of conduct or continuous treatment, the limitations of General Statutes § 52-584 have been tolled. As quoted above, these doctrines may be properly employed for this purpose. Therefore, this court must find that one of these doctrines applies to toll the statute of limitations that would have run in late 1993.
The plaintiffs do not dispute that DeCholnoky did not continue to treat either Christopher or Mrs. Neuhaus after Christopher was delivered at the Stamford Hospital on September 17, 1990. Rather, the plaintiffs contend CT Page 2005 that because DeCholnoky had a "special relationship" with Christopher and wrongfully did not tell his parents the extent of their son's injuries, the continuing course of conduct doctrine applies. The doctor counters, however, that because she had no continuing duty to the plaintiffs and the plaintiffs have failed to show that her alleged negligence related to the original wrongful act, the doctrine in question is inapplicable.
The Supreme Court has laid out a three-pronged test pertaining to the effect the continuing course of conduct doctrine has on the tolling of the statute of limitations set forth in § 52-584. In a summary judgment context, relying on the evidence presented, the court "must determine if there is a genuine issue of material fact with respect to whether [DeCholnoky]: (1) committed an initial wrong upon the [plaintiffs]; (2) owed a continuing duty to the [plaintiffs] that was related to the alleged original wrong; and (3) continually breached that duty." Witt v. St. Vincent's Medical Center, 252 Conn. 363, 370,746 A.2d 753 (2000). In Witt, the plaintiff demonstrated that the defendant physician was aware of the risk that he failed to communicate to the patient because the defendant physician expressed concern about the plaintiff's medical condition eleven years after treating him. Witt
is the only case in which our Supreme Court extended the duty of a pathologist, in the context of a physician-patient relationship, to warn the plaintiff of his concern of cancer at the time of the original diagnosis. Eleven years after the original diagnosis, the pathologist sent the original slides and report to the plaintiff's treating oncologist. On the report, the pathologist wrote a note to the treating oncologist indicating that at the time of the original diagnosis, the pathologist had been concerned that the plaintiff might have been "evolving a small lymphocytic lymphoma/CCL." Id., 365. Our Supreme Court concluded that whether the physician-patient relationship with the pathologist may have continued on the basis of his continuing duty to warn the plaintiff of his concerns and whether his duty to warn was continually breached were questions of material fact, and, therefore, that summary judgment was improper. Id., 364-65.
"[A] precondition for the operation of the continuing course of conduct doctrine is that the defendant must have committed an initial wrong upon the plaintiff." Sherwood v. Danbury Hospital, supra, 252 Conn. 204. Here, the plaintiffs claim that the critical initial wrong of DeCholnocky was allegedly failing to advise Christopher's parents of both the nature of the extensive medical care Christopher received after birth and that Christopher was at risk for permanent injuries. In the pleadings the plaintiffs make no allegations of negligence by DeCholnoky after the time of birth; only acts or omissions before or at birth are alleged. The plaintiffs have satisfied the first prong of the Witt test, however, if CT Page 2006 the contention that the initial wrong of DeCholnoky included her failure to advise the plaintiffs that Christopher was at risk for permanent injury is accepted because there clearly is one or more unresolved issues of material fact.
For the second and third prongs of the Witt test to be satisfied, "there must be evidence of the breach of a duty that remained in existence after commission of the original wrong thereto." (Internal quotation marks omitted.) Sherwood v. Danbury Hospital, supra,252 Conn. 204. This court must ask whether, after Christopher left the hospital, DeCholnoky had a continuing duty to warn his parents about the risk of permanent injury, and whether DeCholnoky breached that duty. The Supreme Court "has held this requirement to be satisfied when there was wrongful conduct of a defendant related to the prior act . . . Specifically, in determining whether the continuing course of conduct doctrine applies to the repose section of the statute of limitations in § 52-584, [the Supreme Court has] held twice, in the medical treatment context, that continuing wrongful conduct may include acts of omission as well as affirmative acts of misconduct . . ." (Citation omitted; internal quotation marks omitted.) Sherwood v. DanburyHospital, supra, 252 Conn. 204-05. The continuing duty has also been found to exist when there was some "special relationship" between the parties. See Witt v. St. Vincent's Medical Center, supra, 250 Conn. 370.
After Christopher was discharged from the hospital in October 1990, DeCholnoky neither treated nor cared for him. This is undisputed. Moreover, the plaintiffs have not alleged or presented any evidence pertaining to any subsequent wrong. Instead, the plaintiffs rely on an alleged "special relationship" between Christopher and DeCholnoky. In opposition to Stamford Hospital's motion for summary judgment, the plaintiffs asserted this same argument. The court, Adams, J., found this argument unpersuasive, as does this court: "The plaintiffs argue that there was a special relationship between [DeCholnoky] and Christopher because, in general, a [physician] owes a fiduciary duty to his or her newborn patient. No specific facts or allegations are presented by the plaintiffs to support the existence of a special relationship, and the issue presented is a legal one, i.e., whether a special relationship of the nature required by the continuing course of conduct doctrine exists. The court holds that there is no logical or policy basis to conclude that a special relationship existed giving rise to a continuing duty owed by [DeCholnoky] to Christopher. Plaintiffs' contention would, in effect, impose a special relationship with, and therefore a continuing duty toward, every child [delivered by a physician]. Such an expansion of the continuing course of conduct doctrine is unwise and not in the least supported by appellate court decisions in this state." Neuhaus v.CT Page 2007DeCholnoky, Superior Court, judicial district of Stamford/Norwalk at Stamford, Docket No. CV 96 0153565 (June 5, 2002, Adams, J.).
Finally, the plaintiffs have not presented any evidence that shows a genuine issue of material fact regarding whether DeCholnoky breached a duty she allegedly owed Christopher. The plaintiffs have submitted an affidavit of Dr. Marcus Hermansen in an effort to prove that "the standard of care in 1990 required [DeCholnoky] to advise Christopher's parents of the course of his treatment at the hospital and his prognosis; that Christopher's prognosis included risk of `permanent sequelae' from his lungs' immaturity and that the parents should have been advised of the risk. Plaintiffs contend that this duty to advise was a continuing one." Neuhaus v. DeCholnoky, supra, Superior Court, Docket No. CV 96 0153565. Again, the plaintiffs have asserted the same argument found unpersuasive in the court's consideration of Stamford Hospital's motion for summary judgment. Even though this court has concluded that DeCholnoky had no continuing duty to either Christopher or to his parents, whether a hypothetical duty was breached will be examined.
Recently, under similar circumstances, the Appellate Court held "that in order to prove a breach of duty occurred, there must be evidence that the defendant actually knew of the risk it is charged with failing to warn about. `Speculative evidence about whether a medical services provider was aware of a specific medical risk cannot serve as a basis for opposition to a motion for summary judgment.' Hernandez v. Cirmo,67 Conn. App. 565, 575, 787 A.2d 657, cert. denied, 259 Conn. 931,793 A.2d 1084 (2002). In Nieves v. Cirmo, 67 Conn. App. 576, 787 A.2d 650, cert. denied, 259 Conn. 931, 793 A.2d 1085 (2002), the plaintiff's expert opined that the defendant owed a duty to inform the plaintiff of an increased risk. Id. 580. Even with that evidence, however, the Appellate Court upheld summary judgment against the plaintiff because it was not enough that the defendant should have known of the increased risk. Rather, it was incumbent for the plaintiff to produce evidence that the defendant was aware of the risk. Id. 583-84." Neuhaus v. DeCholnoky,supra, Superior Court, Docket No. CV 96 0153565.
The Nieves case also stated that whether a continuing duty exists is a question of law. Nieves v. Cirmo, supra, 67 Conn. App. 571. DeCholnoky never treated either the mother or the newborn baby, Christopher, after he was delivered. After his birth, Christopher's care was transferred to a pediatrician. The defendant not only did not see or treat the infant or the mother after birth, but also did not prescribe any medication for either person.
Based on the discussion above, even if the plaintiffs' argument that CT Page 2008 DeCholnoky's initial wrong as not advising the plaintiffs of the possible future risk to Christopher's health, the plaintiffs have not satisfied the second and third prongs of the test set forth in Witt. Consequently, as the continuing course of conduct doctrine does not apply to toll the three-year repose under General Statutes § 52-584.
Fraudulent Concealment
Like her former co-defendant, Stamford Hospital, DeCholnoky "next argues that the plaintiffs have failed to show that there is a genuine issue of material fact as to their fraudulent concealment claim. Specifically, [she] claims that there is no evidence that [she] concealed information on long maturity from the plaintiffs or that [she] had the intent to conceal any cause of action from the plaintiffs. [DeCholnoky] argues that the plaintiffs' cause of action under [General Statutes] § 52-584 is not tolled, [but] rather the plaintiffs are barred from bringing any cause of action against [her] because the statute of limitations period has expired." Neuhaus v. DeCholnoky, supra, Superior Court, Docket No. CV 96 0153565.
General Statutes § 52-595 and the requisite showing of proof has already been discussed above. Additionally, the plaintiff bears the burden of showing that "the [health care provider] was aware of the facts necessary to establish that cause of action and that it hadintentionally concealed those facts from the plaintiff." (Emphasis in original.) Golden v. Johnson Memorial Hospital, Inc., 66 Conn. App. 518,532, 785 A.2d 234, cert. denied, 259 Conn. 902, 789 A.2d 990 (2001). However, our Supreme Court has "held that issues of motive, intent and good faith are not properly resolved on a motion for summary judgment. See, e.g., Town Bank Trust Co. v. Benson, 176 Conn. 304, 309,407 A.2d 971 (1978); United Oil Co. v. Urban Redevelopment Commission,158 Conn. 364, 376, 260 A.2d 596 (1969). [The Supreme Court has] also held, however, that even with respect to questions of motive, intent and good faith, the party opposing summary judgment must present a factual predicate for his argument in order to raise a genuine issue of fact."Wadia Enterprises. Inc. v. Hirschfeld, 224 Conn. 240, 250, 618 A.2d 506
(1992).
The court, Adams, J., has already addressed this issue, and this court finds its conclusions logically sound: "The plaintiffs fail to make a showing that § 52-584 is tolled because of [DeCholnoky's] fraudulent concealment. The plaintiffs submit evidence that demonstrates that Andrea Neuhaus was not told by [DeCholnoky] of the extent of Christopher Neuhaus' injuries or the possibility that he may suffer permanent injuries arising from his lungs' immaturity . . . [Neuhaus states in her CT Page 2009 affidavit] that she did not become aware of Christopher Neuhaus' injuries stemming from his premature birth until 1995 . . . This evidence, however, does not demonstrate that [DeCholnoky] actually knew, during the time Christopher Neuhaus was a patient at the hospital, that Christopher Neuhaus suffered or would suffer permanent injuries from RDS and his lungs' immaturity, or that [she] intentionally concealed this information from the plaintiffs so that they would untimely be precluded from bringing a cause of action against [DeCholnoky]. The plaintiffs offer no evidence to establish a factual predicate for their claim of fraudulent concealment and, therefore, have failed to show that a genuine issue of material fact exists regarding the tolling of the statute of limitations based on this theory." Neuhaus v. DeCholnoky, supra, Superior Court, Docket No. CV 96 0153565.
Constitutionality
Once again, the plaintiffs are challenging the constitutionality of General Statutes § 52-584. The court, Adams, J., has already rejected these claims, and this court adopts the reasoning set forth in memorandum of decision, dated June 5, 2002, regarding Stamford Hospital's motion for summary judgment:
 First, [the plaintiffs] contend that the three-year repose provision completely bars Christopher's claims from court in violation of the guarantee of open courts found in the Connecticut Constitution at Article First, § 10. Second, they argue that the repose period is a violation of their rights to equal protection under the law protected by both the Connecticut and federal constitutions.
 The Connecticut Supreme Court has not addressed the constitutionality of General Statutes § 52-584. However, the Appellate Court considered the issue recently in Golden v. Johnson Memorial Hospital, [66 Conn. App. 518, 532, 785 A.2d 234, cert. denied, 259 Conn. 902, 789 A.2d 990 (2001)]. That case dealt with the same constitutional arguments presented by the plaintiffs in this case. The Golden decision held that the three-year repose provision did not violate Article First, § 10 of the Connecticut Constitution even though the three years might expire before the plaintiffs knew he had any injury. The court also held that the statute did not violate equal protection rights. The rejection of those arguments by the Golden court compels this court to reject them also.
Neuhaus v. DeCholnoky, supra, Superior Court, Docket No. CV 96 0153565.
As the court finds that there are no genuine issues of material fact; CT Page 2010 that the plaintiffs have failed to provide any evidence that establishes that DeCholnoky concealed any cause of action from the plaintiffs, and that General Statutes § 52-584 is constitutional and bars the plaintiffs' claims, summary judgment in favor of DeCholnoky is granted.
So Ordered.
Dated at Stamford, Connecticut, this 3rd day of February 2003.
William B. Lewis, J.T.R.