******************************************************

The "officially released" date that appears near the be-
ginning of each opinion is the date the opinion will be pub-
lished in the Connecticut Law Journal or the date it was
released as a slip opinion. The operative date for the be-
ginning of all time periods for filing postopinion motions
and petitions for certification is the "officially released"
date appearing in the opinion.

All opinions are subject to modification and technical
correction prior to official publication in the Connecticut
Reports and Connecticut Appellate Reports. In the event of
discrepancies between the advance release version of an
opinion and the latest version appearing in the Connecticut
Law Journal and subsequently in the Connecticut Reports
or Connecticut Appellate Reports, the latest version is to
be considered authoritative.

The syllabus and procedural history accompanying the
opinion as it appears in the Connecticut Law Journal and
bound volumes of official reports are copyrighted by the
Secretary of the State, State of Connecticut, and may not
be reproduced and distributed without the express written
permission of the Commission on Official Legal Publica-
tions, Judicial Branch, State of Connecticut.

******************************************************

# LOUIS D. CORNEROLI *v.* RONALD W. KUTZ ET AL.
## (AC 39507)

DiPentima, C. J., and Alvord and Eveleigh, Js.

*Syllabus*

The plaintiff sought to recover damages from the defendant attorney and the defendant law firm for their alleged legal malpractice in connection with their representation of the plaintiff in a probate matter involving the plaintiff's claim to the proceeds of a sale of a certain painting. The painting had been purchased for $3 by the plaintiff's cousin, D. After D died, the plaintiff entrusted the painting to B, who, unbeknownst to the plaintiff, sold the painting to A for approximately $1.2 million. A subsequently sold the painting to an unknown purchaser for millions of dollars more than what he paid for it. After the plaintiff learned about the sales of the painting, he brought an action for, inter alia, fraud and conversion in New York against B, A, and the unknown purchaser, which the New York court dismissed as to all parties except B. Subsequently, after commencing an action against, inter alia, the plaintiff, B, and A, the estate of D reached a settlement agreement for $2.4 million with A, and withdrew its claim against the plaintiff. The plaintiff brought a probate action claiming that he was entitled to 50 percent of the settlement because of an alleged former business partnership with D. The Probate Court granted the estate's motion to disallow the plaintiff's claim, and, thereafter, the defendants, on behalf of the plaintiff, filed an appeal of the Probate Court's decision in the Superior Court. The estate filed a motion to dismiss the appeal for lack of subject matter jurisdiction on the ground that the appeal was untimely, which the trial court granted, and this court affirmed the dismissal. Subsequently, the plaintiff filed the present legal malpractice action on the basis of the defendants' failure to timely prosecute the appeal from the Probate Court on his behalf. The trial court granted the defendants' motion for summary judgment and rendered judgment thereon, from which the plaintiff appealed to this court. On appeal, he claimed, inter alia, that it was improper for the trial court to require expert testimony on the issue of causation and, in the alternative, the testimony of his expert, M, on the issue of causation was sufficient to defeat summary judgment. *Held*:

1. The trial court properly rendered summary judgment in favor of the defendants on the basis of its conclusion that there was insufficient expert testimony on the issue of causation: Connecticut law generally requires the plaintiff in a legal malpractice action arising from prior litigation to prove, through expert testimony, that but for the alleged breach of duty, it was more likely than not that he would have prevailed in the underlying cause of action, and, in the present case, the plaintiff failed to prove that, had the defendants filed a timely appeal from the decision of the Probate Court, he was more likely than not to prevail on appeal to the Superior Court, as the opinions of M regarding causation were based on possibility, not probability, and M's testimony, thus, failed to clearly express an opinion that had the defendants timely filed the appeal to the Superior Court, the plaintiff was more likely than not to prevail; furthermore, even if M expressed his opinions in terms of reasonable probabilities rather than possibilities, there was an inadequate basis for any opinion by M on the issue of causation, as the Probate Court's decision relied on the preclusive effect of the New York action, and because M was unfamiliar with the substance of that action, he had no basis on which he could opine, beyond mere speculation, as to what the result of an appeal to the Superior Court would have been.

2. This court declined to review the plaintiff's claim that the trial court improperly considered the defendants' reply brief in support of the motion for summary judgment, which, contrary to its certification, was not received by the plaintiff's counsel prior to the morning of the hearing on the defendants' motion for summary judgment, that claim having been raised for the first time on appeal to this court and having been

inadequately briefed; moreover, the plaintiff could not prevail on his claim that the trial court improperly permitted the defendants to file their surreply, as the record was clear that the defendants sought and received the court's permission to file the surreply.

Argued January 9—officially released July 17, 2018

*Procedural History*

Action to recover damages for legal malpractice, and for other relief, brought to the Superior Court in the judicial district of Middlesex, where the court, *Aurigemma*, *J.*, granted the defendants' motion for summary judgment and rendered judgment thereon, from which the plaintiff appealed to this court. *Affirmed.*

*Daniel H. Kennedy III*, with whom was *R. Bartley Halloran*, for the appellant (plaintiff).

*Cristin E. Sheehan*, with whom, on the brief, was *Michelle Napoli-Lipsky*, for the appellees (defendants).

*Opinion*

ALVORD, J. The plaintiff in this legal malpractice action, Louis D. Corneroli, appeals from the summary judgment rendered by the trial court in favor of the defendants, Ronald W. Kutz and Kutz & Prokop, LLP. On appeal, the plaintiff claims that the court improperly (1) rendered summary judgment in favor of the defendants on the basis of its conclusion that there was insufficient expert testimony on the issue of causation, and (2) considered certain documents filed by the defendants. We affirm the judgment of the trial court.

The plaintiff's present appeal marks yet another chapter in a saga of extensive litigation over the last twenty years. The litigation arises out of the serendipitous purchase of an original John Singer Sargent painting by the plaintiff's late cousin, Salvatore D. D'Amico (decedent). The defendants represented the plaintiff in a probate matter involving the plaintiff's claim to the proceeds of the sale of that painting, and in subsequent appeals to the Superior and Appellate Courts.

In its memorandum of decision, the trial court set forth the following findings of the Probate Court. "The decedent frequented tag sales in hopes of finding undervalued assets. At some point in 1978, he acquired for $3 a painting which turned out to be an original [John Singer] Sargent painting called 'Carmencita Dancing' worth several million dollars. The problem encountered by the decedent was that he was unable to get the painting authenticated and thus was unable to realize the full value of the painting during his lifetime. At some point, the decedent's cousin, Louis Corneroli, began working with the decedent, driving him around and also becoming involved in his various projects, including the effort to authenticate the Sargent painting. Mr. Corneroli contends that he and the decedent had a partnership in which they agreed to work on matters together and equally split the profits realized from their activity. The estate of Salvatore D. D'Amico strenuously denies any such partnership. . . .

"After the decedent died, Mr. Corneroli took possession of the painting and entrusted it to Mark Borghi, who owned and operated an art gallery in New York and who was in a better position to have the painting authenticated than Mr. Corneroli. . . . Unbeknownst to Mr. Corneroli, Mr. Borghi sold the painting to a Mr. [Warren] Adelson, another art dealer who specialized in Sargent paintings, for approximately $1.2 million. Mr. Adelson turned around and sold the painting for millions more than what he paid for it, again without the knowledge of Mr. Corneroli. At some point, Mr. Corneroli learned of the sale of the painting and filed the Corneroli Complaint in New York, suing Mr. Borghi, Mr. Adelson and John Doe, the still unknown purchaser of the painting, alleging, inter alia, fraud, conversion

and breach of contract claims. Judge Ira Gammerman, of the Supreme Court of the state of New York, after hearing testimony from Mr. Corneroli on the Corneroli complaint, found that Mr. Corneroli testified that he had an agreement with Mr. Borghi under which the parties were to divide the sales price of the sale of the painting with Mr. Borghi receiving half and Mr. Corneroli receiving half. . . . Mr. Corneroli freely acknowledged during the trial that both the decedent while living and his estate had a 50% interest in the painting. . . . The Corneroli complaint, however, alleged that Mr. Corneroli was the sole owner of the painting. . . .

"After hearing the testimony of Mr. Corneroli, the New York court dismissed the case as to all parties except Mr. Borghi. It is crystal clear from the transcript that the claim against Mr. Adelson was dismissed 'with prejudice.' . . . . The New York court further found the potential recovery from Mr. Borghi in Mr. Corneroli's favor to be approximately $313,000, which was roughly one quarter of the sales price of the sale of the painting from Mr. Borghi to Mr. Adelson. . . . Mr. Corneroli acknowledged that he received about that amount in either paintings or cash in July, 2003, and that the parties thereafter returned to Connecticut to open an estate for the decedent so that the estate could pursue its share.

"The administrators of the newly-opened estate of D'Amico took a vastly different view of the history than Mr. Corneroli. Based on their belief that Mr. Corneroli had denied knowledge as to the location of the painting shortly after the death of the decedent and further had not disclosed that he had given the painting to the New York art dealer until shortly before the proceedings in New York occurred, the estate took the position that there never was any partnership and that Mr. Corneroli had absconded with the painting after the decedent died. The estate filed a lawsuit in federal court in December, 2003, which suit was dismissed without prejudice. A new suit was filed in July, 2005, in which the estate sued, inter alia, Mr. Corneroli, Mr. Borghi and Mr. Adelson, alleging that the painting had been stolen by Mr. Corneroli and that title never passed due to this fact. The estate sought a declaratory judgment that it was the owner of the painting, a replevin of the painting back to the estate and damages from Mr. Corneroli for his alleged misdeeds. Mr. Corneroli filed an answer with special defenses to the complaint in which he generally alleged that his actions were taken as a partner of the decedent and that he did not steal the painting. Mr. Corneroli did not, however, file a counterclaim or seek to join the [estate] in its claims against the other defendants, including Mr. Adelson.

"A two day mediation to resolve the case occurred on December 11 [and] 12 at New Britain Superior Court.

Counsel for Mr. Corneroli attended on the first day but did not return for the second day. The remaining parties reached an agreement on the second day, which involved Mr. Adelson paying the [estate] the sum of $2.4 million. In a lengthy agreement put on the record, the [estate] indicated that the settlement was subject to the [estate] obtaining a release of Mr. Corneroli and the Probate Court approving the settlement as well. It does not appear any formal notice was provided to Mr. Corneroli of the settlement, however, his attorney was called in connection with executing a release, which was refused. The Probate Court hearing occurred and the settlement was approved by the Probate Court. The case against Mr. Corneroli was withdrawn. Thereafter, Mr. Corneroli, in reviewing the probate file, learned about the settlement amount for the first time. He filed a claim with the estate dated August 23, 2007, in which he stated that he was a partner with the decedent in attempting to get the painting authenticated and that their agreement was that any funds received as a result of getting the painting authenticated would be split equally and thus he was entitled to receive 50 [percent] of the 2.4 million settlement." (Emphasis omitted; footnote omitted.) The estate moved to disallow the plaintiff's claim as untimely.

The Probate Court assumed for purposes of deciding the motion that the plaintiff's claim of partnership was true, but nonetheless granted the estate's motion to disallow the plaintiff's claim. The court concluded that "if, in fact, a partnership existed, the New York action represented the one opportunity it had to obtain a recovery in this matter against Mr. Adelson," and "the dismissal of the New York action against Mr. Adelson, with prejudice, indicates to the court that Mr. Corneroli's future opportunity to pursue a claim against Mr. Adelson, either individually or as part of a partnership, has been forever precluded." The court further determined that the plaintiff or, alternatively, the partnership, "had no claim against Mr. Adelson," and "upon the conclusion of the New York litigation, the last remaining asset of any 'partnership' was the $300,000 claim against Mr. Borghi, which Mr. Corneroli testified to, but which could not be the subject of any award . . . as the estate was not a party plaintiff in the action. Mr. Corneroli cannot claim any interest in that claim as he received his judgment in that amount against Mr. Borghi already."

On the basis of its conclusion that "the New York litigation fully and finally resolved any issues of partnership assets and . . . the fruits of the litigation brought thereafter by the estate in no way can be determined to be considered a partnership asset as a matter of law," the court characterized the plaintiff's claim against the estate as an attempt to claim "an interest in a partnership asset which, as a matter of law, is not a partnership asset." The Probate Court granted the estate's motion

to disallow the plaintiff's claim and, on March 27, 2008, sent notice of its decision to the parties and counsel.

On June 4, 2008, the defendants, on behalf of the plaintiff, filed an appeal of the Probate Court's decision in the Superior Court. The estate moved to dismiss the appeal for lack of subject matter jurisdiction, claiming that the appeal was untimely. The court granted the motion and dismissed the appeal as untimely.[1] This court affirmed the dismissal, and our Supreme Court declined to hear the matter. See *Corneroli* v. *D'Amico*, 116 Conn. App. 59, 67, 975 A.2d 107, cert. denied, 293 Conn. 928, 980 A.2d 909 (2009).

In 2012, the plaintiff filed this legal malpractice action on the basis of the defendants' failure to timely prosecute the appeal from the Probate Court on his behalf. In his fourth amended complaint, the plaintiff alleged that the defendants were negligent in their representation of him in the underlying probate matter, and that "[h]ad the defendants filed a timely appeal, the plaintiff would have had a reasonable basis for a successful outcome of the de novo appeal."

On April 28, 2016, the defendants moved for summary judgment, arguing that no genuine issue of material fact existed because the plaintiff had "failed to disclose any expert who can opine on the issue of proximate cause, a necessary element in any legal malpractice action." On July 27, the court issued a memorandum of decision, in which it granted the defendants' motion. This appeal followed.

I

The plaintiff first claims that the trial court improperly rendered summary judgment in favor of the defendants on the basis of its conclusion that there was insufficient expert testimony to create a genuine issue of material fact as to causation. Specifically, he argues that it was improper for the court to require expert testimony on the issue of causation, and that even if it were proper, his expert's testimony on the issue of causation was sufficient to defeat summary judgment. We disagree.

The following procedural history is relevant to our resolution of this claim. During discovery, the plaintiff disclosed two experts: (1) Attorney John A. Berman, a retired probate judge, and (2) Professor Jeremy McClane, a professor at the University of Connecticut School of Law.[2]

During his deposition, Professor McClane testified that he is an expert on partnership law. He extensively opined on the issue of partnership in the underlying probate matter, testifying as to his belief that there was "a reasonable basis for a successful outcome of the appeal" because there was "both a reasonable basis that Corneroli would have been able to show that there was a partnership and that the painting was partnership

property and that any disposition or any money coming out of a disposition of that painting was also partnership property . . . ." When questioned on the issue of causation, the following colloquy occurred:

"[The Defendants' Counsel]: Can you state to a reasonable degree of probability that the result of any appeal—of the outcome of an appeal in the Superior Court would have been different as opposed to [the Probate Court's] decision?

\* \* \*

"[Professor McClane]: I mean, it's hard to say what the outcome of a litigation would be just because there are so many moving parts, so many things involved, the skill of the lawyers, you know, what the jury thinks of the witnesses, but I think that there is certainly a very good chance that the outcome would have been different than what was indicated in [the Probate Court's] opinion.

"[The Defendants' Counsel]: But can you say to a reasonable degree of probability that it's more likely than not the outcome would have been different?

\* \* \*

"[Professor McClane]: I think there's a very good chance the outcome would have been different. I don't know that I can say more likely than not. I'm not saying it is or it isn't. I just don't think I can really say simply because, you know, if you were to believe everything— if a finder of fact were to believe everything that is in all of this testimony and all of these document, then I think, yes, there's a—it's likely that the outcome would be different because I think they would understand that this is a partnership asset and the claim is really about liquidating the partnership asset and getting the value for it. But I can't opine on whether or not people are going to believe one set of testimony over another.

"[The Defendants' Counsel]: Okay. So sitting here today, you can't testify—you can only testify you believe there's a very good chance the outcome would have been different, not that it's more likely than not it would have been different?

\* \* \*

"[Professor McClane]: I can say that if at a trial everybody believed—that all of the testimony of Mr. Corneroli were believed, then I think it's more likely than not.

"[The Defendants' Counsel]: And what are the chances that all of his testimony would be believed?

\* \* \*

"[Professor McClane]: I don't have the crystal ball to say that, unfortunately."

On April 28, 2016, the defendants moved for summary

judgment. In their memorandum in support of the motion, the defendants argued that no genuine issue of material fact existed with respect to the issue of causation because "neither of the plaintiff's disclosed experts have offered testimony that the plaintiff would have prevailed on legal and/or factual grounds had the probate appeal been timely commenced and had the Superior Court conducted a trial de novo on the merits of [the] plaintiff's claims." With respect to Professor McClane's testimony on the issue of causation, the defendants argued that he "could not state to a reasonable degree of probability that the outcome of a timely appeal would have differed from [the Probate Court's] decision." The defendants highlighted Professor McClane's testimony that: (1) it was "hard to say what the outcome of a litigation would be just because there are so many moving parts"; (2) he did not know if he could say "more likely than not" that the outcome would have been different; (3) he was not "saying it is or it isn't" more likely than not; (4) he could not opine as to whether a fact finder would believe "one set of testimony over another"; and (5) he did not "have the crystal ball" to evaluate the chances of the fact finder believing the plaintiff's testimony. The defendants noted that the Probate Court assumed for purposes of its analysis that a partnership existed between the plaintiff and the decedent with respect to the painting, and that Professor McClane could not "articulate any basis on which the Superior Court would have reached a different result." The defendants further argued that Professor McClane's testimony spoke to "possibilities, not probabilities, which is legally insufficient to meet the burden of proof," and accordingly, the plaintiff had failed to establish a prima facie case of legal malpractice.

The trial court rendered summary judgment in favor of the defendants on July 27, 2016. In its memorandum of decision, the court concluded that "Professor McClane could not state to a reasonable degree of probability that the outcome of a timely appeal would have differed from [the Probate Court's] decision," and highlighted his testimony that he did not know if he could say "more likely than not" that the outcome would have been different, and that he was not "saying it is or it isn't" more likely than not. The court further concluded that "Professor McClane failed to offer any testimony as to his bases for challenging the decision of [the Probate Court]." Specifically, the court noted that Professor McClane's testimony did not provide a basis for challenging the Probate Court's conclusion that the New York action represented the plaintiff's only opportunity to recover against Adelson under any legal theory. The court concluded: "[N]either [Professor McClane's] deposition testimony nor his affidavit provide any basis to support the opinion that Mr. Corneroli would probably have prevailed in his de novo probate appeal. To the contrary, Professor McClane testified

that he was not familiar with the substance of [the Probate Court's] opinion or Mr. Corneroli's litigation history vis-à-vis the painting at issue. The opinion of the Probate Court was rational, logical and based on Mr. Corneroli's prior litigation with respect to the painting. In order to decide contrary to the opinion of [the Probate Court], a Superior Court Judge would certainly need a good reason. Professor McClane has completely failed to articulate such [a] reason. Thus, he provided no basis for any opinion as to causation. Without such a basis there is no genuine issue of material fact. Summary judgment enters in favor of the defendants."

We begin with the applicable standard of review and principles of law that guide our analysis. "Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law. . . . Our review of the trial court's decision to grant the defendant's motion for summary judgment is plenary. . . . Summary judgment in favor of a defendant is proper when expert testimony is necessary to prove an essential element of the plaintiff's case and the plaintiff is unable to produce an expert witness to provide such testimony. . . .

"Malpractice is commonly defined as the failure of one rendering professional services to exercise that degree of skill and learning commonly applied under all the circumstances in the community by the average prudent reputable member of the profession with the result of injury, loss, or damage to the recipient of those services . . . . Generally, a plaintiff alleging legal malpractice must prove all of the following elements: (1) the existence of an attorney-client relationship; (2) the attorney's wrongful act or omission; (3) causation; and (4) damages. . . .

"The essential element of causation has two components. The first component, causation in fact, requires us to determine whether the injury would have occurred but for the defendant's conduct. . . . The second component, proximate causation, requires us to determine whether the defendant's conduct is a substantial factor in bringing about the plaintiff's injuries. . . . That is, there must be an unbroken sequence of events that tied [the plaintiff's] injuries to the [defendant's conduct]. . . . This causal connection must be based [on] more than conjecture and surmise. . . . [N]o matter how negligent a party may have been, if his negligent act

bears no [demonstrable] relation to the injury, it is not actionable . . . .

"The existence of the proximate cause of an injury is determined by looking from the injury to the negligent act complained of for the necessary causal connection. . . . In legal malpractice actions arising from prior litigation, the plaintiff typically proves that the . . . attorney's professional negligence caused injury to the plaintiff by presenting evidence of what would have happened in the underlying action had the [attorney] not been negligent. This traditional method of presenting the merits of the underlying action is often called the case-within-a-case. . . . More specifically, the plaintiff must prove that, in the absence of the alleged breach of duty by her attorney, the plaintiff would have prevailed [in] the underlying cause of action and would have been entitled to judgment. . . . To meet this burden, the plaintiff must produce evidence explaining the legal significance of the attorney's failure and the impact this had on the underlying action." (Citations omitted; emphasis omitted; footnote omitted; internal quotation marks omitted.) *Bozelko* v. *Papastavros*, 323 Conn. 275, 282–84, 147 A.3d 1023 (2016).

We first address the plaintiff's argument that it was improper to require expert testimony on the issue of causation because the "probability of success of the underlying case is an ultimate issue." According to the plaintiff, "[i]t would be inappropriate for Mr. Corneroli to disclose an expert on the underlying issue, as the court can directly decide the merits of the underlying case." This argument is entirely without merit.

Section 7-3 (a) of the Connecticut Code of Evidence provides in relevant part: "Testimony in the form of an opinion is inadmissible if it embraces an ultimate issue to be decided by the trier of fact, except that . . . an expert witness may give an opinion that embraces an ultimate issue where the trier of fact needs expert assistance in deciding the issue." In regard to the issue of causation in legal malpractice cases, our Supreme Court recently ruled that "although there will be exceptions in obvious cases, expert testimony . . . is a general requirement for establishing the element of causation in legal malpractice cases. Because a determination of what result should have occurred if the attorney had not been negligent usually is beyond the field of ordinary knowledge and experience possessed by a juror, expert testimony generally will be necessary to provide the essential nexus between the attorney's error and the plaintiff's damages." (Footnotes omitted.) *Bozelko* v. *Papastavros*, supra, 323 Conn. 284–85. In *Bozelko*, our Supreme Court recognized the need for expert assistance to decide the issue of whether an attorney's alleged malpractice caused the claimed injury. In light of the holding in *Bozelko*, we reject the plaintiff's argument that it is improper to permit an expert to testify

as to his opinion on causation in a legal malpractice case.[3] See also *Dixon* v. *Bromson & Reiner*, 95 Conn. App. 294, 299–300, 898 A.2d 193 (2006) ("in a legal malpractice case such as this, an expert witness is necessary to opine whether the defendant's alleged breach of care proximately caused the plaintiff's alleged loss or damages").[4]

Because we have concluded that, to defeat summary judgment, the plaintiff was required to present expert testimony to prove causation, we must now examine the substance of Professor McClane's testimony to determine whether summary judgment was proper. "Expert opinions must be based upon reasonable probabilities rather than mere speculation or conjecture if they are to be admissible in establishing causation. . . . To be reasonably probable, a conclusion must be more likely than not. . . . Whether an expert's testimony is expressed in terms of a reasonable probability that an event has occurred does not depend upon the semantics of the expert or his use of any particular term or phrase, but rather, is determined by looking at the entire substance of the expert's testimony." (Internal quotation marks omitted.) *Drew* v. *William W. Backus Hospital*, 77 Conn. App. 645, 662–63, 825 A.2d 810, cert. granted, 265 Conn. 909, 831 A.2d 249 (2003) (appeal withdrawn December 22, 2003).

As we have noted, Connecticut law generally requires the plaintiff in a legal malpractice action arising from prior litigation to prove, through expert testimony, that but for the alleged breach of duty, it was more likely than not that he would have prevailed in the underlying cause of action. In this case, the plaintiff was required to prove that, had the defendants filed a timely appeal from the decision of the Probate Court, he was more likely than not to prevail on appeal to the Superior Court. On appeal to this court, the plaintiff argues that "Professor McClane's deposition testimony and expert disclosure make it clear that he believes with a reasonable probability that Mr. Corneroli would have prevailed in the de novo probate appeal." We disagree.

Reviewing in its entirety Professor McClane's testimony, and viewing that testimonial evidence in a light most favorable to the plaintiff, we conclude that the plaintiff failed to produce the expert testimony necessary to prove the essential element of causation in his legal malpractice action. The substance of Professor McClane's testimony on the issue of causation can be summarized as follows: (1) he found it "hard to say what the outcome of a litigation would be just because there are so many moving parts"; (2) there was "certainly a very good chance" that the plaintiff would have prevailed on appeal from the Probate Court; (3) even though he thought that there was a "very good chance" that the plaintiff would have prevailed on appeal, he did not know that he could "say more likely than not";

(4) he was not saying that "it is or it isn't" more likely than not that the plaintiff would prevail on appeal; (5) he could not "opine on whether people are going to believe one set of testimony over another"; (6) if, at a trial, "all of the testimony of Mr. Corneroli were believed," it was "more likely than not" that he would prevail; and (7) he did not have a "crystal ball" to opine on the chances of the fact finder believing all of the plaintiff's testimony. It is clear from this testimony that Professor McClane's opinions regarding causation were based on possibility, not probability. Those possibilities depended on the "many moving parts" that Professor McClane described, which included: (1) the skill of the lawyers; (2) the jury's opinion of the witnesses; (3) the likelihood of the fact finder believing the testimony and documents; (4) the jury's understanding that the painting was a partnership asset; (5) the jury's understanding that "the claim is really about liquidating the partnership asset and getting the value for it"; and (6) the likelihood of "everybody" believing the testimony of the plaintiff. Professor McClane's testimony fails to clearly express an opinion that had the defendants timely filed the appeal to the Superior Court, the plaintiff was more likely than not to prevail.[5]

Furthermore, even if we were to assume that Professor McClane expressed his opinions in terms of reasonable probabilities rather than possibilities, we conclude that there was an inadequate basis for any opinion by Professor McClane on the issue of causation. The Probate Court largely based its decision on its observation that "if, in fact, a partnership existed, the New York action represented the one opportunity it had to obtain a recovery in this matter against Mr. Adelson." As the trial court noted, Professor McClane failed to review the New York decision. Professor McClane testified that he understood the plaintiff's involvement in the New York litigation and he understood that the plaintiff's claim against Mr. Adelson was dismissed with prejudice, but that, in addition to not reading the New York court's decision, he also did not: (1) read the transcripts of that case; (2) review the evidence presented in that case; or (3) know what the cause of action was in that case. When questioned about his opinion as to the Probate Court's conclusion that the New York action precluded the probate claim, the following colloquy occurred:

"[The Defendants' Counsel]: And in the last paragraph of page three, exhibit 4, it begins, quote, 'The plain conclusion reached by this court, however, is that if, in fact, a partnership existed, the New York action represented the one opportunity it had to obtain a recovery in this matter against Mr. Adelson,' close quote. Do you see that?

"[Professor McClane]: Yes, I do.

* * *

"[The Defendants' Counsel]: Do you agree as to that conclusion?

"[Professor McClane]: I don't actually have any basis on which to evaluate that conclusion, simply because I don't know what the action—what the specific cause of action was in New York.

"For example, were they suing for a breach of a contract of sale between the partnership and Mr. Borghi? In that case, then that claim is obviously foreclosed. But if there was another sort of duty, some kind of unlawful conversion or something like that, then that's not foreclosed by the New York action.

"But, again, *I just don't know*, right. *So I don't want to speculate.*

"[The Defendants' Counsel]: And you're not here to testify about the effect of that decision; correct?

"[Professor McClane]: Yeah." (Emphasis added.)

The question with respect to the issue of causation is whether, on appeal, the plaintiff was more likely than not to prevail. The result in the Probate Court was determined in large part by the preclusive effect of the New York action. Professor McClane conceded that to opine on the preclusive effect of the New York action, he would have to engage in speculation. Since the Probate Court's decision relied on the preclusive effect of the New York action, and Professor McClane was unfamiliar with the substance of that action, he had no basis on which he could opine, beyond mere speculation, as to what the result of an appeal to the Superior Court would have been.[6] See, e.g., *Weinstein* v. *Weinstein*, 18 Conn. App. 622, 636–37, 561 A.2d 443 (1989) (where expert did not examine books or records of business, trial court did not abuse discretion by refusing to allow testimony regarding valuation of business because there was insufficient basis for opinion on that issue).

We conclude that the defendants established the lack of a genuine issue of material fact concerning the issue of causation, such that they were entitled to judgment as a matter of law. Even viewing the evidence in the light most favorable to the plaintiff, we conclude that he failed to present evidence that would raise such an issue. Accordingly, the court properly rendered summary judgment in favor of the defendants.[7]

## II

The plaintiff also claims that the trial court improperly: (1) considered the defendants' reply brief in support of the motion for summary judgment, and (2) permitted the defendants to file a surreply brief in further support of the motion for summary judgment. These claims are meritless.

The following procedural history is relevant to our

resolution of these claims. The defendants filed their motion for summary judgment and supporting memorandum on April 28, 2016. On June 6, the plaintiff filed his memorandum in opposition to the defendants' motion for summary judgment. On June 14, the defendants filed a reply brief in further support of their motion for summary judgment. On the last page of the reply brief, the defendants' counsel certified that a copy was "mailed or electronically delivered on this 14th day of June, 2016, to all counsel . . . ."

On June 20, the court heard argument on the defendants' motion for summary judgment. At that time, the plaintiff's counsel represented to the court that although the defendants' counsel certified that a copy of the reply brief "was e-mailed and sent via mail to both my office and [co-counsel's] office," they had not received a copy. Counsel further represented that she discovered that the reply brief had been filed that morning when a paralegal checked the court docket prior to the hearing. Counsel argued that this was prejudicial, as she had not yet researched any of the cases cited in the defendants' reply brief. Counsel requested the court's permission to file a surreply brief within one week, stating: "[W]e're okay moving forward with the argument today, but we would like a chance to respond without them then responding again, but I think out of fairness."[8] The court granted the request of the plaintiff's counsel to file a surreply brief within a week of the hearing.

On June 27, as permitted by the court, the plaintiff filed a surreply brief in opposition to the defendants' motion for summary judgment. The plaintiff attached to his surreply, as exhibit B, an affidavit of Professor McClane, which stated:

"On March 31, 2016, I sat for a deposition by Defendants' counsel in Hartford, Connecticut. . . .

"I was questioned by the Defendants' counsel as to the probability that Mr. Corneroli would have been successful on his appeal from Probate Court had the Defendants filed a timely appeal. I testified that there was a reasonable basis for a successful outcome of that appeal and that there was a very good chance the outcome would have been different than it was in the Probate Court. I believe it was reasonably probable. . . .

"When queried as to whether it was 'more likely than not' I did not understand the terminology in the context of the pending legal malpractice action. As I now understand the Defendants' position, I am comfortable that my reasonable probability standard well exceeds more likely than not. . . .

"It was my opinion on March 31, 2016, and it is still my opinion, that it is more likely than not that Mr. Corneroli would have been successful had the Defendants filed a timely appeal."

On June 30, the defendants filed their own surreply brief in further support of the motion for summary judgment. The defendants argued that exhibit B to the plaintiff's surreply constituted a "sham affidavit," an "affidavit in opposition to a motion for summary judgment that contradicts the affiant's prior deposition testimony," which the court should reject. The defendants acknowledged that Connecticut courts had not expressly adopted the sham affidavit rule but cited cases in which courts had applied the "underlying rationale for the rule" in deciding motions for summary judgment. The defendants argued that the affidavit was an attempt to "submit contradictory testimony from [the plaintiff's] own expert to avoid the entry of summary judgment," and that the affidavit was improper, untimely, lacked credibility, and could not "be explained as the result of confusion." The defendants argued that the affidavit was an attempt to materially alter Professor McClane's testimony and, alternatively, violated the court's scheduling order as the introduction of additional testimony from an expert after expert discovery concluded.

On July 1, the plaintiff filed an objection to the defendants' surreply. The plaintiff cited Practice Book § 11-10,[9] which requires a party seeking to file a surreply to obtain permission from the court, and argued that because the defendants had failed to seek permission to file their surreply, it was not properly before the court. Also on July 1, the defendants filed a caseflow request, in which they requested the court's permission to file a surreply. The defendants listed as a reason for the request: "Plaintiff's counsel offered an affidavit from his expert which contradicts prior testimony. Defendants request that the court give due consideration to a surreply addressed to issues raised by the plaintiff's brief including the expert affidavit." On July 18, the court overruled the plaintiff's objection.[10]

The plaintiff argues, for the first time on appeal, that the court improperly considered the defendants' reply brief, which, contrary to its certification, was not received by the plaintiff's counsel prior to the morning of the hearing on the defendants' motion for summary judgment. We conclude that the plaintiff has abandoned, by failing to adequately brief, this claim. The plaintiff devotes three sentences of his brief to this issue, in which he does not cite or analyze any case law but merely makes bare factual assertions. See footnote 7 of this opinion. Furthermore, "[t]o review claims articulated for the first time on appeal and not raised before the trial court would be nothing more than a trial by ambuscade of the trial judge." (Internal quotation marks omitted.) *Bragdon* v. *Sweet*, 102 Conn. App. 600, 607, 925 A.2d 1226 (2007). Accordingly, we decline to review this claim.

The plaintiff also argues that the court improperly

permitted the defendants to file the June 30 surreply. Specifically, he argues that, because the defendants "neither made any oral request nor filed a request for leave for permission to make such a filing" pursuant to Practice Book § 11-10, the surreply "was not properly before the court." We disagree.

Practice Book § 11-10 (c) provides: "Surreply memoranda cannot be filed without the permission of the judicial authority." The record here is clear that the defendants sought, and received, the court's permission to file the surreply. After it considered the plaintiff's objection, the court overruled the objection and granted the defendants permission to file the surreply.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] General Statutes § 45a-186 (a) requires the filing of an appeal in the Superior Court no later than thirty days after the mailing of the Probate Court's decision. See *Corneroli* v. *D'Amico*, 116 Conn. App. 59, 67, 975 A.2d 107, cert. denied, 293 Conn. 928, 980 A.2d 909 (2009).

[2] Although, in his expert disclosure, the plaintiff represented that Attorney Berman would opine on the issue of causation, at his deposition, Attorney Berman was unable to do so. When asked if he had an opinion "as to whether it is more probable than not that the Superior Court would have decided in Mr. Corneroli's favor," Attorney Berman responded: "I do not have. That would be—I didn't prepare for that answer or that question." He further testified that he could not "answer whether or not [the plaintiff] would prevail."

In its memorandum of decision, the court concluded that Attorney Berman's testimony was "insufficient to establish a prima facie case on the issue of causation," and noted his concessions "that he does not know and cannot predict whether [the Probate Court's] decision would have been upheld or reversed on appeal," and that he was "not prepared to opine as to whether it was more probable than not that the Superior Court would have found in Mr. Corneroli's favor on appeal." On appeal to this court, the plaintiff does not challenge the court's conclusions as to Attorney Berman. Furthermore, the plaintiff's counsel conceded during oral argument before this court that Attorney Berman only opined as to the applicable standard of care. Accordingly, we address the plaintiff's claim only as it relates to the opinions of Professor McClane.

[3] The plaintiff similarly argues that by rendering summary judgment in favor of the defendants, the trial court decided an issue of fact as to whether Professor McClane's opinion as to causation was sufficient. This argument also is without merit, because as we have explained, to defeat summary judgment in his legal malpractice case, the plaintiff was required to present expert testimony on the essential element of causation. See *Bozelko* v. *Papastavros*, supra, 323 Conn. 284–85.

[4] The plaintiff now contends that the trial court's statement that "to decide contrary to the opinion of [the Probate Court], a Superior Court judge would certainly need a good reason," indicates a misunderstanding of the nature of a de novo appeal from the Probate Court. Specifically, the plaintiff argues that since the appeal of a probate decision to the Superior Court "is not a challenge to the Probate Court's decision" but, rather, is "a new action," a plaintiff in a probate appeal to the Superior Court "has no duty to demonstrate any flaws in the Probate Court decision." We do not understand the court's statement to indicate a misunderstanding of the nature of a de novo appeal. The court's statement merely recognizes that, to create a genuine issue of material fact to defeat summary judgment, the plaintiff's expert must opine that the plaintiff more likely than not would have prevailed on appeal to the Superior Court, and explain the bases for that opinion. That necessarily would require Professor McClane to provide a "good reason" as to why the Superior Court would "decide contrary to the opinion of [the Probate Court] . . . ."

Furthermore, the plaintiff did not request an articulation on this point, and "[t]o the extent that the [trial] court's decision is ambiguous . . . it was [the appellant's] responsibility to seek to have it clarified." (Internal

quotation marks omitted.) *DiRienzo Mechanical Contractors, Inc.* v. *Salce Contracting Associates, Inc.*, 122 Conn. App. 163, 169, 998 A.2d 820, cert. denied, 298 Conn. 910, 4 A.3d 831 (2010). "In the absence of a motion for articulation . . . it would be sheer speculation for this court to assume that the trial court applied the incorrect legal standard." (Citation omitted; internal quotation marks omitted.) *Daly* v. *DelPonte*, 27 Conn. App. 495, 507, 608 A.2d 93 (1992), rev'd on other grounds, 225 Conn. 499, 624 A.2d 876 (1993).

[5] The plaintiff also argues that the trial court improperly found that an expert must employ the phrase "more likely than not" as to the issue of causation. The court, however, in its memorandum of decision, cited this court's decision in *Drew* v. *William W. Backus Hospital*, supra, 77 Conn. App. 663, acknowledging that the sufficiency of an expert's testimony does not depend on his use of any particular term or phrase. We, therefore, reject the factual premise of the plaintiff's argument.

[6] During his deposition, Professor McClane also opined that there was "a reasonable basis for a successful outcome of the appeal," because there was "a reasonable basis that Corneroli would have been able to show that there was a partnership and that the painting was partnership property and that any disposition or any money coming out of a disposition of that painting was also partnership property . . . ." Professor McClane further testified that although he was aware that the Probate Court, for purposes of deciding the motion to disallow the claim against the decedent's estate, assumed that a partnership did in fact exist between the plaintiff and the decedent, in his opinion, this assumption was "internally inconsistent" with some of the conclusions that the Probate Court reached in that decision. The plaintiff now argues that this testimony demonstrates Professor McClane's opinion that it was reasonably probable that the plaintiff would have prevailed had the defendants filed a timely appeal. In light of our conclusion that Professor McClane did not have an adequate basis for his opinions, we need not address this argument.

[7] The plaintiff also argues that the trial court: (1) improperly opined that the Probate Court's decision was rational and logical "without any review or knowledge of evidence" presented during the probate proceedings; (2) improperly rendered summary judgment in favor of the defendants without any information regarding the evidence that would be presented at a de novo trial; and (3) failed to "contemplate" that new evidence, not presented to the Probate Court, may exist and be presented during a de novo trial to the Superior Court. We conclude that the plaintiff has abandoned these claims through inadequate briefing.

"It is well settled that [w]e are not required to review claims that are inadequately briefed. . . . We consistently have held that [a]nalysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . [F]or this court judiciously and efficiently to consider claims of error raised on appeal . . . the parties must clearly and fully set forth their arguments in their briefs. We do not reverse the judgment of a trial court on the basis of challenges to its rulings that have not been adequately briefed. . . . The parties may not merely cite a legal principle without analyzing the relationship between the facts of the case and the law cited. . . . [A]ssignments of error which are merely mentioned but not briefed beyond a statement of the claim will be deemed abandoned and will not be reviewed by this court." (Internal quotation marks omitted.) *Benedetto* v. *Dietze & Associates, LLC*, 159 Conn. App. 874, 880–81, 125 A.3d 536, cert. denied, 320 Conn. 901, 127 A.3d 185 (2015). The plaintiff has devoted just over a page of his brief to these three arguments, in which he does little more than briefly recite various factual assertions and one general principle of probate law. Accordingly, these claims are briefed inadequately, and we decline to review them.

[8] The plaintiff's counsel at no time objected to the court's consideration of the defendants' reply brief, nor moved to strike the reply brief.

[9] Practice Book § 11-10 (c) provides: "Surreply memoranda cannot be filed without the permission of the judicial authority."

[10] In its memorandum of decision, the trial court refused to consider the affidavit. The court cited the decision of the United States Court of Appeals for the Second Circuit in *Perma Research & Development Co.* v. *Singer Co.*, 410 F.2d 572, 578 (2d Cir. 1969), in which that court said: "If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." The trial court went on to conclude that,

even if it were to "overlook the improbability of Professor McClane's claim that when he was deposed, he did not understand what 'more likely than not' meant, neither his deposition testimony nor his affidavit provide any basis to support the opinion that Mr. Corneroli would probably have prevailed in his de novo probate appeal," as Professor McClane testified that he was not familiar with the substance of the Probate Court's opinion or the New York litigation vis-à-vis the painting.

The plaintiff now argues that the court erred by refusing to consider the affidavit. This claim warrants only a brief analysis. It is within the trial court's discretion whether to accept or decline supplemental evidence in connection with a motion for summary judgment. *Nieves* v. *Cirmo*, 67 Conn. App. 576, 587 n.4, 787 A.2d 650, cert. denied, 259 Conn. 931, 793 A.2d 1085 (2002). Although the court permitted the plaintiff to file a surreply for the purpose of responding to the defendants' reply brief, the plaintiff went beyond merely responding to the defendants' reply brief and attached an affidavit containing statements by Professor McClane, a witness that the defendants would not have the opportunity to redepose prior to the court's decision on the motion for summary judgment. This court will not, on appeal, disturb the trial court's discretion to refuse to consider supplemental evidence submitted after full briefing and argument on a motion for summary judgment.